ARROWSMITH, The T. V.    See Case No. 5,-337.

---

## Case No. 563a.

### Ex parte ARTHUR.

[3 App. Com'r Pat. 287.]

Circuit Court, District of Columbia.    March 22, 1860.

PATENTS FOR INVENTIONS—INTERFERENCE—LUBRI-
CATING OIL-CANS—EVIDENCE.

[1. A device for opening and closing the valve in the spout of a lubricating oil-can by means of a flat spring, connected with a lever and thumb piece, is a new and useful improvement, entitled to be patented, on the testimony of machinists and manufacturers of such articles that it is superior, simpler, less liable to get out of order, and can be made at less cost than an old device, accomplishing the same result by means of a coiled spring.]

[2. The testimony of machinists and manufacturers having practical knowledge of the subject-matter is of greater weight than the opinion of the commissioner of patents on the question of the usefulness and cost of an alleged invention.]

Appeal [by William C. Arthur] from the decision of the commissioner of patents refusing to grant unto him letters-patent for an improvement in oil-cans for oiling machinery. [Reversed.]

MORSELL, Circuit Judge. The claim as set forth by Arthur is in these words: "What I claim as my invention is the combination of the spring A with the valve in the spout arranged as above described."

It is alleged that the above description shows the nature of said invention to be the combination of a flat spring and a valve in the spout of the can, so that the spring shall serve as a lever to open and a spring to close said valve.

The report of the examiner, and adopted by the commissioner as his decision, is dated 11 December, 1858. It states that Arthur claims "the combination of the spring A with the valve in the spout, and arranged as above described,"—whether the valve is located in the spout or at its base or lower end does not seem to be material, for the drawings show both modifications, and in the specification it is said that the valve may be placed in either position. The chief distinction between the invention before us and those to which the examiner has referred and to the discussion of which the applicant in his reasons of appeal mainly confines himself is that, whereas there the valve is kept in position by means of a coiled spring, in Arthur's the valve is forced and held upon its seat by the use of a flat spring. The substitution then of a flat spring for a

coiled spring is the point upon which the question of patentability turns. Prima facie such a substitution is not the proper subject of letters-patent, and we must therefore look to the peculiar application and effect of the two springs in the separate arrangements which have been given to them.

The applicant holds: (1) That my (his) can is simple in construction. (2) It is less liable to get out of order. (3) As it requires fewer parts and a simpler arrangement of them, it is cheaper,—and that all these advantages are directly derivable from * * * the employment of a flat spring. Let us see if the allegations of the applicant are correct. The first and second heads may be merged into the third. Arthur's can has "fewer parts" under a simpler arrangement, and "is therefore cheaper to the public." Referring to the patent granted to Levi S. Enos, Feby. 12, 1856, we find that his valve like Arthur's is attached to the upper end of a rod which extends down into the body of the can. This rod is then bent upwards and reaches through the cap, thus forming two legs, the largest end of which, or to that end pressing through the cap, is attached to the thumb piece, while in Arthur's arrangement the rod bearing the valve is attached to the flat spring, which is soldered to the inner side of the can and extends across its mouth, the end thereof opposite to its attachment bearing a rod which extends up through the top of the vessel and is provided with a thumb piece. Enos has a coiled spring encircling the base of the spout, and having its bearings on the under side of the thumb piece and on the cap of the can a spring. Now what is the number of parts necessarily employed in both constructions? Enos' coil spring and forked rod, to the separate ends of which last the valve and thumb piece are connected, perform precisely the same functions that Arthur's valve rod, cross piece, and thumb rod do. Here then two elements of Enos' can are represented by three elements of Arthur's can, and while the two require no preliminary preparation to fit them to their uses but the simple coiling of the wire, and the bending of the rod into the shape of a syphon whose legs are parallel, the three require four separate operations: 1st. Bending one end of the cross piece or spring at right angles to the body. 2nd. Soldering the cross piece or spring to the inside of the can. 3rd. The attachment of the valve rod to the cross piece or spring. 4th. The attachment of the thumb rod to the cross piece or spring. To say nothing of the comparative time in which these manipulations may be effected, and it being observed that both cans are provided with tubes through which the thumb rods slide, Arthur's plan requires (counting the valves and thumb pieces in both cases) six individual parts; Enos' whole arrangement is effected by five. Where then is to be found the superior simplicity of Arthur's arrangement, where the diminished cost?

Certainly not in the spring which is the gist of the invention—which in Enos' case serves to support the valve rod and return the valve to its seat when depressed for the outflowing of the oil. and which it cannot be and is not denied, can be manufactured no more cheaply than Enos'. We can, therefore, regard Arthur's plan only as a formal modification of Enos' presenting no superior advantages either in operation or in cost of construction.

It is proper to add that several affidavits have been filed in this matter, but they fail to convince us that our judgment is erroneous. From one of them it does not appear that the affiant is any more capable of judging of the merits of this class of inventions than we are; in two others the affiants may be interested in the invention—as far as appears to the contrary; and to the fourth no oath is annexed, as the inventor places great importance in the use of a flat spring in this class of oil-cans he may as well be informed that the device is not new, it having been found in domestic oil-cans and lubricators for machinery. See Austin & Opdyke's rejected applications and the patent granted to Henry J. Hawkins, July 14, 1857, (lubricator,) on the 13 December, 1858. The foregoing report is confirmed, and the application rejected by the commissioner.

Among the papers laid before me in this case there are the affidavits of eight witnesses, consisting of principal and assistant experienced, practical machinists. who swear that they are not interested, four of whom are alluded to in the report just recited, one of them who says he has long been a manufacturer of tin and brass ware; that he has seen and is acquainted with the machines of Enos' and Arthur's cans, and having made an estimate of the cost of the manufacture of each, says he is prepared to state that he can furnish Arthur's can for fifty per cent. less than that of Enos, making both of the same materials. The others swear that they have been acquainted with the two cans and they consider Arthur's can as much superior, simpler. more durable, less liable to get out of order and cheaper.

To the foregoing decision the appellant has filed five reasons of appeal. The fourth will be particularly noticed; it will be sufficient to refer merely to the others. This was the state of the case when the commissioner laid before me all the papers in the case in compliance with due notice directed to be given of the time and place of the hearing.

The appellant appeared by his attorney and submitted; * * * The fourth reason of appeal states—"The commissioner of patents in his rejection of the 14 December, 1858, has made an allegation injurious to said Arthur's invention, and which is controverted by the sworn testimony of men experienced in this branch of business, and filed in the case, to which * * * allegation the said Arthur has so far been refused or not allowed to make an explanation that would place him properly before the community and the patent office. That he is prepared to show that his can can be made with fewer pieces and at much cheaper rates than the one with which it has been so unfavorably compared. The witnesses, four of whose affidavits are alluded to in the report just recited appear from the papers laid before me by the commissioner to be eight in number, all of whom swear that they are not interested in the subject,—one of them that he has long been a manufacturer of tin and brass ware, that he has seen and is acquainted with the machines of Enos' and Arthur's cans, and having made an estimate of the cost of the manufacture of each, says he is prepared to state that he can furnish Arthur's can for fifty per cent. less than that of Enos, making both of the same materials,"—he is said to be amongst the largest manufacturers of such kind of machines in the United States. The others swear that they have been acquainted with the two cans, and that they consider Arthur's can as much superior, simpler, more durable, less liable to get out of order and cheaper. The commissioner in his testimony says: "Several affidavits have been filed in this matter, but they fail to convince us that our own judgment is erroneous. From one of them it does not appear that the affiant is any more capable of judging of the merits of this class of inventions than we are; in two others the affiants may be interested in the invention, as far.as appears to the contrary; and to the fourth no oath is annexed."

There can be no doubt that the capacity of the commissioner to judge, as he has said, must be considered as greatly superior to that of the witnesses, and his judgment worthy fully to be confided in; but the witnesses testify as to their practical knowledge of the machine—a machinist by trade—what such would cost to make them; and of the opinion in the practical use of them of such kind of opportunities and facts it is presumed the commissioner could not have had knowledge—with respect to their being interested, there is no proof of the fact; on the contrary, they have all sworn that they were not, and from the stations they fill, that of masters and assistant-masters of machinery, it would be too much to suppose they have sworn falsely. I cannot, therefore, deny the credit due to their testimony which is claimed—the amount of which shows that the article according to practical use and experiment has been found to be greatly cheaper, better and more convenient to the public, besides answering all the purposes of Enos' invention, thus falling within the principle of patent law stated in Curt. Pat. § 8. "We are of opinion that if the result produced by such a combination be either a new article. or a better article. or a cheaper article to the public than that produced before by

the old method, that such a combination is an invention or manufacture intended by the statute and may well become the subject of a patent."

I think, therefore, there is an error in the decision of the commissioner. and that the same ought to be and hereby is reversed and annulled, and a patent is directed to be issued to the said William C. Arthur as prayed.